The Honorable: Marsha Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

MICHAEL R. MASTRO,                        )    No.  08-202-MJP
                                          )
              Plaintiff,                  )
       vs.                                )
                                          )
TRANSAMERICA LIFE INSURANCE CO., )    **PLAINTIFF'S MOTION FOR**
an Iowa corporation,                      )    **SUMMARY JUDGMENT**
                                          )
              Defendant.                  )    **Noted for consideration on**
_____ )    **December 5, 2008**

## I.        INTRODUCTION AND REQUEST FOR RELIEF

COMES NOW, the plaintiff, Michael R. Mastro ("Mastro"), and hereby moves the court for summary judgment against the defendant, Transamerica Life Insurance Co. ("Transamerica") for all sums prayed for in the complaint.  Mastro is entitled to recover the prepayment "premium" he paid under protest because Washington state law does not permit lenders to accelerate a loan, thereby creating a new maturity date, and then demand a premium for a so-called "prepayment."  Because the prepayment penalty is not enforceable in this case, Mastro is entitled to a judgment for the amount of the prepayment penalty he paid under protest, plus interest and attorneys fees as allowed for in the subject promissory note and related loan documents.  For these same reasons, Transamerica's "counterclaim" for fees should be dismissed with prejudice.

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2727\103\summary judgment motion.doc

## II.     STATEMENT OF FACTS[1]

1

2     In 2002 Transamerica made a loan to a gentleman by the name of Bruce Anderson in the

3     amount of $8,350,000 to finance Mr. Anderson's purchase of a building in Bothell, Washington

4     known as the North Creek Center.  The loan to Mr. Anderson was evidenced by a secured promis-

5     sory note dated July 17, 2002 (hereafter "Note").  A copy of the Note is attached to the supporting

6

7     declaration of Jerry N. Stehlik (hereafter, *Stehlik Decl.*") and identified in this case as *Dep. Ex. 10.*

8     The Note contained a prepayment "premium" provision as well as a due on sale clause.  The prepay-

9     ment premium provision essentially required the borrower to pay a premium if the borrower chose to

10    prepay the loan.  The due on sale clause gave Transamerica the right to accelerate the loan if the

11    property which secured the loan was sold.  These provisions are found in paragraphs 6 and 10 of the

12

13    Note, respectively.  As described in more detail further on, Mastro assumed this Note in 2006.

14    The provisions of the Note were drafted by Transamerica.  According to Gary Wittington,

15    associate general counsel for Transamerica, the form of promissory note which was used to make the

16    Anderson loan later assumed by Mastro had been developed and refined over a number of years.

17    The Note and other related loan documents used in the Anderson loan were based on a "template"

18

19    that Aegon, Transamerica's parent corporation, uses in all of its real estate lending transactions

20    throughout the United States.  *Whittington Dep., pp. 15-26.*

21    In July of 2006, Mastro purchased the North Creek Center from Mr. Anderson for $16

22    million and as part of the purchase Mastro assumed the Note and related loan documents.  As part of

23

24    [1] The facts recited herein are derived from deposition testimony of Mike Mastro and two Transamerica/Aegon
      executives, David Castelluccio and Gary Whittington, and from the Declaration of Jerry N. Stehlik, counsel for Mastro in

25    this action, which identifies various deposition exhibits, authenticates certain documents and establishes certain

26

27

28    Plaintiff's Motion for Summary Judgment - 2

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2727\103\summary judgment motion.doc

1  this loan assumption transaction, Mastro became liable on the Note and Mr. Anderson was released

2  from liability.  At the time Mastro purchased the North Creek Center and assumed the Note to

3  Transamerica, the balance due and owing on the Note was $7,242,249.38.  The assumption was

4  evidenced by a document called "First Amendment to Secured Promissory Note" which is *Dep. Ex.*

5  *11,* attached to the *Stehlik Decl.*

6

7          At the time Mastro purchased the North Creek building and assumed the Note, the existing

8  tenant in the building, Plexus Corp., had moved out and the building was vacant.  *Mastro Dep., pp.*

9  *56-57.*  Immediately after Mastro closed the purchase of the North Creek Center and assumed the

10  Note, the lease with Plexus Corp. was terminated by agreement and a new lease was signed with

11  Verathon, Inc.  Plexus Corp. paid $4.3 million in a lease termination fee to buyout the balance of its

12  lease obligation and most of this money was used to fund the tenant improvements for the new

13  tenant, Verathon, Inc.  *Mastro Dep., pp. 79-81.*  The Verathon lease included a tenant improvement

14  allowance of up to $4.5 million and any portion of this allowance not used to fund actual tenant

15  improvements was credited against rent.  *Mastro Dep., pp. 79-81 and Dep. Ex. 38.*  The new

16  Verathon lease was a much better lease than the Plexus lease and substantially increased the value of

17  the North Creek Center building.  *Mastro Dep., p. 57.*  In May of 2007, with Verathon, Inc. in place

18  as a tenant under a new ten year lease, Mastro sold the building for $23 million to B.R.C., LLC.

19

20  B.R.C., LLC is headquartered in Bend, Oregon.  The net economic impact of Mastro's purchase and

21  subsequent sale of the North Creek Center can be summarized as follows:

22          1.          Purchase price of $16 million;

23

24

25  _____

26  background facts.

27

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

Plaintiff's Motion for Summary Judgment - 3

28

W:\CLIENTS\2727\103\summary judgment motion.doc

1      2.      Investment of approximately $4.5 million for tenant improvements and rent

2  abatement to finance the cost of the Verathon, Inc. lease for a total investment of $20.5 million;

3      3.      The value of the building with the Verathon, Inc. lease in place was $23 million as

4  evidenced by the sale price to B.R.C., LLC.

5
6      By terminating the Plexus lease, funding the tenant improvements from the lease termination

7  fee and securing Verathon, Inc. as a new tenant, Mastro increased the value of the North Creek

8  Center building by $7 million at the cost of approximately $4.5 million thereby generating a $2.5

9  million value enhancement in less than a year.

10      In a routine financial disclosure made by Mastro to Transamerica in February of 2007,

11  Transamerica learned that Mastro had received the $4.3 million lease termination fee from Plexus.

12
13  *Dep. Ex. 57.*  On June 19, 2007, Transamerica, through its parent corporation Aegon, sent a default

14  letter to Mastro stating that he was in default of various loan documents because he terminated the

15  Plexus lease and retained the lease termination fee without Transamerica's permission.  *Dep. Ex. 61.*

16  In this default letter Transamerica did not accelerate the Note but reserved its right to do so.

17      After Mastro received the June 19, 2007 default letter, he had discussions with

18  Transamerica's representatives with respect to how the default might be cured.  Mastro indicated a

19
20  willingness to pay the $4.3 million termination fee to Transamerica if it would either be applied to

21  reduce the loan or at least accrue interest until such time as a decision is made on how the funds

22  would be utilized.  Transamerica would not agree to either request.  *Mastro Dep., pp. 24-25;*

23
24  *Castelluccio Dep., pp. 70, 78-79; Dep. Ex. 63 and 65.*

25

26

27  Plaintiff's Motion for Summary Judgment - 4

28

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2727\103\summary judgment motion.doc

1    Around the same time, Mastro asked Transamerica to modify the Note.  On July 5, 2007,

2    Transamerica, through its parent company Aegon, indicated a willingness to begin discussions about

3    modifying the Note but as a precondition to discussing a modification Aegon demanded that Mastro

4    execute a letter agreement requiring Mastro to acknowledge that he had no "defense, counterclaim

5    or right of set off to the enforcement of Lender's remedies."  *Dep. Ex. 68*.  Mastro did not agree to

6    this condition.

7

8    In mid-August of 2007, Transamerica discovered that Mastro had sold the North Creek

9    building to B.R.C., LLC.  Not more than a day after learning about the sale of the property the asset

10   manager in charge of this loan at Aegon, David Castelluccio, recommended to this boss, Randy

11   Smith, that the Note be accelerated.  *Dep. Ex. 71*.  In an internal Aegon email from Nancy Putz to

12   numerous persons in the organization, Ms. Putz reports a conversation she just had with

13   Mr. Castelluccio as follows:

14

15       Dave [Castelluccio] just found out and informed me that the borrower sold the
         property on this loan last year.  The plan by Dave is to accelerate the loan
16       immediately, once direction is received from counsel….

17   Ms. Putz had the timing wrong because the property was sold in May of that same year.  Setting that

18   aside, it is clear from this email that Mr. Castelluccio decided to accelerate the loan based on the sale

19   of the property that secured Transamerica's loan.  Mr. Castelluccio confirmed in his deposition that

20

21   this is what he told Ms. Putz.  *Castelluccio Dep., pp. 97-98.*

22   As part of that sale to B.R.C., LLC, B.R.C., LLC granted a deed of trust to Mastro to secure

23   the balance of the purchase price.  This arrangement is called a "wrap" in the sense that the first deed

24   of trust on the property securing Transamerica's loan is "wrapped" around by a second deed of trust

25

26

27

28   Plaintiff's Motion for Summary Judgment - 5

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2727\103\summary judgment motion.doc

1    to secure a portion of the purchase price owed to the seller.  The first position deed of trust remains

2    undisturbed.  This is a common mechanism for financing real estate transactions and one that Mastro

3    has utilized "many times" "consistently" "for 30 years." *Mastro Dep., pp. 36, 67 and 106.*

4            Upon learning of the sale of the property to B.R.C., LLC, Transamerica immediately issued a

5    notice of default to Mastro citing, among other things as grounds for a default, that Mastro sold the

6    real property subject to Transamerica's first deed of trust to B.R.C., LLC.  In this notice of default,

7

8    Transamerica also cited the fact that Mastro recorded the B.R.C., LLC wrap deed of trust against the

9    property.  Transamerica also reiterated the defaults asserted in the June 19, 2007 letter relating to the

10   termination of the lease and the retention of the lease termination payment.  *Stehlik Decl.*  Impor-

11   tantly, in this second notice of default, Transamerica *expressly accelerated* the Note.  In this notice

12   Transamerica demanded full payment of the principal balance and accrued interest plus a

13

14   prepayment premium of $1,708,676.42 which constituted 28% of the principal balance of

15   $6,874,092.97 plus accrued interest (at the default rate) of $287,602.41.  At the time the Note was

16   accelerated in September of 2007, the loan balance of $6,874,092 was secured by collateral worth

17   $23 million so at that time the loan to value ration was approximately 30%.

18

19           In order to avoid a non-judicial foreclosure proceeding, which was threatened in the notice of

20   default, Mastro paid the prepayment premium under protest on October 5, 2007.  *Stehlik Decl.*  Soon

21   thereafter, in January of this year, Mastro sued Transamerica to recover the amount of the prepay-

22   ment penalty plus interest and attorneys fees.  To that point in time, Mastro had made all of the

23   scheduled Note payments and the loan was current.  *Castelluccio Dep., p. 54 and Dep. Ex. 60.*

24

25

26

27

28   Plaintiff's Motion for Summary Judgment - 6

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2727\103\summary judgment motion.doc

# III.    DISCUSSION AND ARGUMENT

A.    <u>Washington State law governs the enforceability of the provisions of the Note and related loan documents</u>.

The prepayment premium which plaintiff seeks to recover in this action was provided for in paragraph 6 of the Note.  Similarly, the right to accelerate the Note on a sale of the underlying real property was provided for in the Note, specifically paragraph 10.  Paragraph 21 of the Note, provides that the Note shall be construed and enforced according to the laws of Washington State.  That paragraph specifically provides:

21.    **GOVERNING LAW**
This Note shall be construed and enforced according to, and governed by, the laws of Washington without reference to conflicts of laws provisions which, but for this provision, would require the application of the law of any other jurisdiction.

Unquestionably, the provisions of the Note, including the prepayment premium and the due on sale acceleration provision "shall be construed and enforced according to …, the laws of Washington …".

B.    <u>Washington State law does not permit a lender to charge a prepayment premium in conjunction with accelerating a note</u>.

The Washington State Supreme Court in the case of *McCausland v. Banker's Life Insurance Company of Nebraska*, 110 Wn.2. 716, 756 P2d 941 (1988) held that if a lender accelerates a debt in the event of a sale of the underlying property it may not also demand a prepayment premium.  The court explained its policy rationale by noting, "[T]he two provisions, rather than working contemporaneously, are used as economic complements to one another.  While the due-on-sale clause enables the lender to require early payment of lower than market rate loans, the prepayment penalty is used to discourage refinancing by the borrower when market interest rates fall below the rate on

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2727\103\summary judgment motion.doc

the borrower's existing loan." *McCausland,* at 726-727.

It is important to note that the *McCausland* court did not invalidate the due on sale provision or the prepayment penalty merely because both provisions were contained in the subject promissory note. The court did, however, strongly condemn the use of an acceleration clause and simultaneous demand for a prepayment penalty. The *McCausland* court stated specifically:

> The most important consideration in this regard is that these two clauses do not operate simultaneously. As the lender here concedes, if it elects upon sale or encumbrance to accelerate the debt, it may *not* demand any prepayment penalty. <u>This is correct, because payment after acceleration is not prepayment.</u> As this court long ago explained:
>
>> [o]f course, if the indebtedness is payable on or before some specified date, or the creditor has the right to so elect, and exercising such right elects an earlier date, then the date of his election becomes the maturity date on or after which effective tender may be made by the debtor of principal and *interest up to date of tender. Pedersen v. Fisher,* 139 Wash. 28, 33, 245 P. 30 (1926).

(Emphasis added by underline, italics in original).

While the *McCausland* court did not find that the *presence* of a due on sale clause and a pre-payment premium in the same instrument to be an undue restraint on alienation, it clearly proscribed the use of the two clauses in conjunction with each other.

The *McCausland* case is not aberrational. Its reasoning was based in part on the rationale employed in *Sleven Container Corp. v. Provident Federal Savings & Loan Association of Peoria*, 98 Ill. App. 3d, 646 424 N.E. 2d 939 (1981). In that case, the lender had reserved the right to increase the prepayment charge to 8% and accelerate the debt or do both in the event of a sale of the mort-gaged property without its consent. The court noted that neither the prepayment provision nor the due on sale clause was self activating and the lender made the election to accelerate the debt. The court reasoned that the early payment was involuntary and by definition was not a prepayment

BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2727\103\summary judgment motion.doc

1   because the lender's acceleration of the debt had required the borrower to make payment prior to the

2   original maturity date.  Thus, upon acceleration, there is really no prepayment as such, and therefore

3   a prepayment penalty cannot be exacted under those circumstances.  This rationale was also adopted

4   in the states of South Dakota in *American Federal Savings & Loan Association of Madison v. Mid-*

5   *America Service Corp.*, 329 N.W. 2d 124 (S.D. 1983) and in the Seventh Circuit Federal Court of

6   Appeals in the case of *Matter of LHD Realty Corp.*, 726 F.2d 327 (7th Cir. 1984).  To the extent that

7   the rationale in *Sleven Container Corp* is relevant here, then it is notable that neither the prepayment

8   premium nor the due on sale clause was self activating.  Under paragraph 9 of the Note, the lender

9   specifically reserved its option to accelerate the indebtedness.  It provides, specifically: "If a Default

10  exists, the Lender may, *at its option,* without notice to the Borrower, declare the unpaid principal

11  balance of the Note to become immediately due and payable …".  (Emphasis added).

12          Thus, in this situation, based upon the provisions of the Note, Transamerica had the option to

13  accelerate or not, as it wished, and if it chose to do so, which it did, under the rule enunciated in

14  *McCausland*, Transamerica cannot then also exact a prepayment premium.  Indeed, under the rule

15  stated by the *McCausland* court, acceleration for any reason, if it occurs at the election of the lender,

16  may not be deemed a prepayment giving rise to a liability to a prepayment penalty.  The principle

17  enunciated in *McCausland,* to wit: "[P]ayment after acceleration is not prepayment," is not limited to

18  accelerations based on the sale of the mortgaged property.  However, even if *McCausland* were read

19  to apply only to accelerations based on the sale of the mortgaged property there is no doubt that the

20  primary reason for accelerating the Note in this case was the sale of the mortgaged property.

21          This result is particularly appropriate where, as here, the borrower had faithfully made all

22

23

24

25

26

27  BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0104  •  fax (206) 587-0277

28  Plaintiff's Motion for Summary Judgment - 9

1   loan scheduled loan payments.  Further, as a result of replacing Plexus with Verathon as the tenant

2   in the building, the value Transamerica's collateral increased from $16 million to $23 million with a

3   $4.5 million investment thereby enhancing Transamerica's first lien position in the property by many

4   millions of dollars.  By pointing out these economic circumstances, Mastro does not suggest they are

5   relevant to the analysis.  However, from a fundamental fairness perspective, where, as here, the

6   lender's risk of repayment and recover on its loan was not put at risk, and all scheduled payments

7

8   had been made in a timely manner, it is fundamentally unfair to accelerate the note, deem the

9   acceleration to be a prepayment and then exact that kind of penalty.

10      The *McCausland* decision compels granting the relief prayed for by the plaintiff in his com-

11  plaint.  Based upon the rule of law established in *McCausland* going back to 1988, Mastro should

12  not have been compelled to pay a prepayment premium of $1.6 million on a loan balance of just over

13  $7 million.  In this state, prepayment premiums are not enforceable when the debt is accelerated.

14

15  Mastro paid the prepayment premium to avoid the initiation of a deed of trust foreclosure proceed-

16  ing.  Wanting to avoid this, Mastro paid the prepayment penalty under protest, fully reserving his

17  right to recover those funds.  Transamerica wrongfully demanded the prepayment penalty after

18  electing to accelerate the Note.  Mastro is entitled to get those funds back.

19

20      C.      Mastro is entitled to recover prejudgment interest and attorneys' fees.

21      The Note, as well as the myriad of other related loan documents, allow for the recovery of

22  attorneys fees by Transamerica in the event that it is forced to take collection action to enforce its

23  rights under any of the loan documents.  Under Washington law, specifically, RCW 4.84.330, these

24  fee provisions are applied reciprocally so that the prevailing party is entitled to recover its attorneys'

25

26

27  Plaintiff's Motion for Summary Judgment - 10

28

BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2727\103\summary judgment motion.doc

1   fees whether or not the prevailing party is specified as the beneficiary of the fee shifting provision.

2   Therefore, if Mastro is deemed to be the prevailing party in this lawsuit he is entitled to recover his

3   fees expended in prosecuting this action.  The attorneys' fees provision in the Note is found in

4   paragraph 8 titled "Default".  The specific language is as follows:

5
6   If a Default exists and the Lender engages counsel to collect any amount under this
    Note or if the Lender is required to protect or enforce this Note in any probate,
7   bankruptcy or other proceeding, then any expenses incurred by the Lender in respect
    of the engagement, including the reasonable fees and reimbursable expenses of
8   counsel and including such costs and fees which relate to issues that are particular to
    any given proceeding, shall constitute indebtedness evidenced by this Note shall be
9   payable on demand, and shall bear interest at the Default Rate.

10  This Note contains the prepayment penalty provision that gave rise to Mastro's claim.  It also pro-

11  vides for the recovery of fees which, under Washington State law, permits the prevailing party to

12  recover its fees on "any action on [the] contract."  Accordingly, if Mastro prevails in this action,

13
14  which would certainly be the case if this motion is granted, Mastro is entitled to recover all fees

15  expended prosecuting this action.

16      The amount Mastro paid to Transamerica as a prepayment penalty was a specific, fixed, and

17  therefore "liquidated" amount.  Because this amount was liquidated, Mastro is entitled to recover

18  prejudgment interest on the amount paid.  *Taylor v. Shigaki,* 84 Wash.App. 723, 930 P.2d 340

19  (1997), review denied 132 Wash.2d 1009, 940 P.2d 654.

20
21      Mastro tendered the full balance of the loan plus the prepayment premium *under protest* on

22  October 5, 2007.  *Stehlik Decl.*  Mastro is entitled to judgment for the amount of the prepayment

23  premium, interest at the rate of 12% per annum to date of judgment and thereafter to the date the full

24  amount is paid, plus all attorneys' fees and costs incurred in prosecuting this action.  The plaintiff

25
26
27
28  Plaintiff's Motion for Summary Judgment - 11

BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2727\103\summary judgment motion.doc

1    requests leave to submit further proof on the amount of fees and costs incurred in bringing this

2    action to recover the prepayment penalty.

3                                **IV.        CONCLUSION**

4          The governing rule of law could not be clearer.  *McCausland* flatly prohibits exacting a pre-

5    payment penalty when the maturity of the note is intentionally changed by acceleration at the

6    election of the lender.  *McCausland* has been the law in the state of Washington since 1988, now

7    going on 20 years as part of this state's jurisprudence.  Undoubtedly state law applies to uses in this

8

9    case and undoubtedly under *McCausland,* the prepayment penalty in the Note was unenforceable

10   under the circumstances of this case.  Accordingly, the plaintiff is entitled to judgment against

11   Transamerica Life Insurance Company as a matter of law for the amount of the prepayment penalty,

12
     prejudgment interest plus all fees and costs.  Similarly, Transamerica's "counterclaim" for fees and
13
14   costs should be dismissed with prejudice.

15         RESPECTFULLY SUBMITTED this 12th day of November, 2008.

16                                    BUCKNELL STEHLIK SATO & STUBNER, LLP

17

18                                    _____/s/ Jerry N. Stehlik_____
                                      Jerry N. Stehlik, WSBA #13050
19                                    of Attorneys for Plaintiff

20

21

22

23

24

25

26
                                          **BUCKNELL STEHLIK SATO & STUBNER, LLP**
27                                              2003 Western Avenue, Suite 400
                                                   Seattle, Washington 98121
28   Plaintiff's Motion for Summary Judgment - 12      (206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2727\103\summary judgment motion.doc